UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HENRETTA LITTLE, #827259,

        Petitioner,

v.                                       CASE NO. 2:14-CV-10166
                                          HONORABLE GERALD E. ROSEN

MILLICENT WARREN,

        Respondent.
_____/

**OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF
HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY,
AND DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL**

**I.    Introduction**

       This is a habeas case brought pursuant to 28 U.S.C. § 2254. Michigan prisoner Henretta Little ("Petitioner") was convicted of torture, MICH. COMP. LAWS § 750.85, kidnapping, MICH. COMP. LAWS § 750.349, and assault with intent to do great bodily harm less than murder, MICH. COMP. LAWS § 750.84, following a jury trial in the Saginaw County Circuit Court. She was sentenced to concurrent terms of 18 years 9 months to 41 years 8 months on the torture and kidnapping convictions and a concurrent term of 2 to 10 years imprisonment on the assault conviction in 2012. In her pleadings, she raises claims concerning a limitation on the cross-examination of her testifying co-defendant, the jury instructions, and the scoring of the state sentencing guidelines. For the reasons set forth herein, the Court finds that those claims lack merit and denies the habeas petition. The Court also denies a certificate of appealability and denies leave to proceed in forma pauperis on appeal.

## II. Facts and Procedural History

Petitioner's convictions arise from her and her co-defendant's abuse of a developmentally disabled young man at their shared residence in Saginaw County, Michigan in 2009 and 2010. The Michigan Court of Appeals described the relevant facts, which are presumed correct on federal habeas review, 28 U.S.C. § 2254(e)(1); *Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009), as follows:

> The victim lived with Little and Little's cousin and co-defendant, Laprinces Jones, from late 2009 until January 2010. He testified that, during this time, he was not allowed to leave the house and that Little injured his legs and feet by striking him with a hammer on multiple occasions. She also forced him to sleep in a chest-like bench that was locked shut at the end of her bed and she locked him in a closet.
>
> Little also deprived the victim of food and water and hit him with her hands, a brush, and an extension cord. Little scratched his face and burned him too. The victim said that Jones would hold him down while Little abused him, but that Jones burned him once and hit him with the hammer once. The victim was able to escape the house and walk to a nearby hospital in January 2010.
>
> Dr. Anjanette Kemp treated the victim and noted that he had scratches on his face with some bruising, as well as marks on his chest that were consistent with burns. Kemp also saw multiple linear scars on the victim's chest, back, and upper arms, which the victim said were from being whipped. Kemp indicated that the linear injuries were in various stages of healing, but did not opine as to their cause. Kemp also noted that he had injuries to his feet that were consistent with damage from a hammer and were partially healed. According to Kemp, the victim also appeared dehydrated and very thin. She testified that he had internal bleeding in the brain, which was consistent with head trauma.
>
> Jones testified at trial and verified much of the victim's version of events. Jones stated that she was originally charged with torture, kidnapping, and assault with intent to do great bodily harm, but took a plea deal. As part of the deal, she agreed to testify against Little and the prosecutor agreed to dismiss the torture and kidnapping charges. She pleaded guilty to assault with intent to do great bodily harm and unlawful imprisonment and was sentenced to serve a minimum of seven years in prison.
>
> Little's trial lawyer attempted to question Jones about the possible sentences associated with torture and kidnapping, but the prosecutor objected. The trial court

sustained the objection and noted that the judge, not the jury, was responsible for sentencing and, because Little was charged with the same crimes, the jury should not be exposed to the potential sentences.

Little's lawyer also requested an instruction on Jones' plea deal, which included the potential penalties. The trial court denied the potential penalty portion of the request and clarified again that it was the judge's job to sentence, not the jury's. The trial court said that the jury should not have sympathy or prejudice in making their decision because of the possible penalties. The trial court then instructed the jury with the standard witness instruction and an accomplice instruction. The jury found Little guilty of torture, kidnapping, and assault with intent to do great bodily harm.

*People v. Little*, No. 308962, 2013 WL 1137183, *1 (Mich. Ct. App. March 19, 2013) (unpublished)

Following her convictions and sentencing, Petitioner filed an appeal of right with the Michigan Court of Appeals raising the same claims contained in her current petition. The Michigan Court of Appeals affirmed her convictions and sentences. *Id*. Petitioner then filed an application for leave to appeal with the Michigan Supreme Court, which was denied. *People v. Little*, 495 Mich. 853, 835 N.W.2d 580 (2013).

Petitioner thereafter filed her federal habeas petition raising the following claims:

I. The trial court denied [Petitioner] her state and federal constitutional rights to confrontation and due process where it refused to allow defense counsel to question co-defendant Laprinces Latoya Jones regarding the full extent of the leniency given to her in return for her testimony against [Petitioner].

II. The trial court reversibly erred in violation of [Petitioner's] due process right to a properly instructed jury by refusing to instruct the jury regarding the full extent of the leniency given to Laprinces Latoya Jones in return for her testimony against [Petitioner].

III. The trial court erroneously assessed [Petitioner] 50 points under OV 7 where this assessment did not reflect aggravating factors for torture as compared to others in its class and 15 points under OV 8 where the sentencing offense includes the kidnapping charge, making her 225 minimum sentence a departure above her 108-180 month minimum sentence guideline range.

Respondent has filed an answer to the petition contending that it should be denied for lack of merit.

**III.    Standard of Review**

Federal law imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002).

"[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21

4

(citations omitted); *see also Williams*, 529 U.S. at 409. "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh*, 521 U.S. at 333, n. 7; *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)).

The United States Supreme Court has held that "a state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)). Pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* Thus, in order to obtain federal habeas relief, a state prisoner must show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*; *see also White v. Woodall*, _ U.S. _, 134 S. Ct. 1697, 1702 (2014). "When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Woods v. Donald*, _ U.S. _, 135 S. Ct. 1372, 1376 (2015).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme

Court at the time the state court renders its decision. *Williams*, 529 U.S. at 412; *see also Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) (noting that the Supreme Court "has held on numerous occasions that it is not 'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this Court") (quoting *Wright v. Van Patten*, 552 U.S. 120, 125-26 (2008) (per curiam)); *Lockyer*, 538 U.S. at 71-72. Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington*, 562 U.S. at 100. Furthermore, it "does not require citation of [Supreme Court] cases–indeed, it does not even require awareness of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16.

The requirements of "clearly established law" are to be determined solely by Supreme Court precedent. Thus, "circuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court,'" and "[i]t therefore cannot form the basis for habeas relief under AEDPA." *Parker v. Matthews*, 567 U.S. _, 132 S. Ct. 2148, 2155 (2012) (per curiam). The decisions of lower federal courts, however, may be useful in assessing the reasonableness of the state court's resolution of an issue. *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003)); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002).

Lastly, a state court's factual determinations are presumed correct on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998). Moreover, habeas review is

"limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, _, 131 S. Ct. 1388, 1398 (2011).

## IV. Analysis

### A. Limitation on Cross-Examination Claim

Petitioner first asserts that she is entitled to habeas relief because the trial court limited defense counsel's cross-examination of cooperating co-defendant, LaPrinces Jones, regarding the potential sentences that she avoided by accepting a plea bargain and agreeing to testify at trial. Pursuant to that agreement, Jones' torture and kidnapping charges were dismissed, she pleaded guilty to assault with intent to do great bodily harm less than murder and unlawful imprisonment, and she was sentenced to a minimum of seven years in prison.[1]

The Michigan Court of Appeals denied relief on this claim, finding that the trial court did not violate Petitioner's confrontation rights by limiting defense counsel's cross-examination of the co-defendant. The court reasoned that the trial court was appropriately concerned about the jury learning of the possible penalties for Petitioner's charged offenses and that defense counsel had ample opportunity to challenge the co-defendant's credibility based upon her plea deal and inconsistencies in her statements. *Little*, 2013 WL 1137183 at *2.

While the issue presented here is certainly not free from doubt -- and, indeed, has resulted in a split in the Circuits -- the state court's decision cannot be said to be contrary to Supreme Court precedent (there is none on this issue), nor does it present an unreasonable application of federal law

---

[1] Jones was sentenced to concurrent terms of 7 to 15 years imprisonment and 7 to 22 ½ years imprisonment on her convictions.

or the facts. The Court begins with a general analysis of the right of cross-examination in the context of the Confrontation Clause.

The Confrontation Clause guarantees a criminal defendant the right to confront the witnesses against him or her. *Davis v. Alaska*, 415 U.S. 308, 315 (1973). "Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested. Subject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation, the cross-examiner is not only permitted to delve into the witness's story to test the witness's perceptions and memory, but the cross-examiner has traditionally been allowed to impeach, *i.e.*, discredit the witness." *Id.* at 314. The right of cross-examination, however, is not absolute. Trial judges "retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness's safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. VanArsdall*, 475 U.S. 673, 679 (1986); *see also Jordan v. Warden, Lebanon Corr. Inst.*, 675 F.3d 586, 594 (6th Cir. 2012). As the United States Court of Appeals for the Sixth Circuit has recently explained:

> 'The key issue is whether the jury had enough information to assess the defense's theory of the case despite the limits on cross-examination.' *United States v. Holden*, 557 F.3d 698, 704 (6th Cir. 2009). 'So long as cross-examination elicits adequate information to allow a jury to assess a witness's credibility, motives, or possible bias, the Sixth Amendment is not compromised by a limitation on cross-examination.' *United States v. Cueto*, 151 F.3d 620, 638 (7th Cir. 1998); *accord United States v. Fields*, 763 F.3d 443, 464 (6th Cir. 2014).

*United States v. Callahan*, _ F.3d _, 2015 WL 5202925, *12 (6th Cir. Sept. 8, 2015).

As noted, the United States Supreme Court has not ruled on the specific issue raised here – whether a criminal defendant's confrontation rights are violated by restrictions on the cross-

examination of a cooperating witness about the possible or maximum penalties he or she avoided by accepting a plea deal and agreeing to testify at trial. The majority of circuit courts which have addressed the issue have held that a defendant's confrontation rights are not violated by restrictions that prevent inquiry into potential or maximum sentences that a cooperating witness avoided (or hopes to avoid) by testifying at trial where there is other testimony from which the jury can assess the witness's credibility. Those courts find that such sentencing information is only marginally relevant and its benefits are outweighed by the risk of jury confusion or jury nullification. *See United States v. Foley*, 783 F.3d 7, 18-19 (1st Cir. 2015);[2] *United States v. Duarte*, 581 F. App'x 254, 257-58 (4th Cir. 2014) (citing *United States v. Scheetz*, 293 F.3d 175, 184 (4th Cir. 2002)); *United States v. Denham*, 437 F. App'x 772, 776-77 (11th Cir. 2011) (citing *United States v. Garrett*, 727 F.2d 1003, 1011-12 (11th Cir. 1984)); *United States v. Walley*, 567 F.3d 354, 358-60 (8th Cir. 2009); *United States v. Reid*, 300 F. App'x 50, 52 (2d Cir. 2008) (citing cases); *United States v. Arocho*, 305 F.3d 627, 636-37 (7th Cir. 2002). A few courts have reached the opposite conclusion, generally finding that the importance of the information outweighs the risk of undue prejudice. *See United States v. Larson*, 495 F.3d 1094, 1106-07 (9th Cir. 2007);[3] *United States v.*

---

[2]This decision is one of the latest in a consistent line of First Circuit rulings. *See, e.g., United States v. Mulinelli-Navas*, 111 F.3d 983, 987-88 (1st Cir. 1997); *United States v. Luciano-Mosquera*, 63 F.3d 1142, 1153 (1st Cir. 1995); *Brown v. Powell*, 975 F.2d 1, 5 (1st Cir. 1992).

[3]More recent unpublished decisions of the Ninth Circuit have upheld similar restrictions on the cross-examination of a cooperating witness when there was other testimony from which the jury could assess the witness's credibility. *See United States v. Johnson*, 469 F. App'x 632, 638 (9th Cir. 2012); *United States v. Gradinariu*, 283 F. App'x 541, 543 (9th Cir. 2008). In *Larson*, the court was particularly concerned that the jury was precluded from learning that one witness avoided a *mandatory* life sentence by cooperating with the government.

*Chandler*, 326 F.3d 210 (3d Cir. 2003); *United States v. Landerman*, 109 F.3d 1053, 1063 (5th Cir. 1997).

The Sixth Circuit has not ruled on this specific issue, *see United States v. Lanham*, 617 F.3d 873, 884 (6th Cir. 2010), but has recently held that certain restrictions on the cross-examination of a cooperating witness do not violate the Sixth Amendment as long as the jury has sufficient information available by which to evaluate the witness's motives and potential bias. *See Callahan*, 2015 WL 5202925 at *12 (limiting inquiry into dismissed charge). District courts within the Sixth Circuit have sided with the majority of the circuit courts in upholding restrictions similar to the one at issue here. *See Reed v. Warden*, No. 2:11-CV-263, 2012 WL 511481, *7-9 (S.D. Ohio Feb. 15, 2012) (magistrate judge's report); *Naturalite v. Scutt*, No. 2:09-cv-73, 2011 WL 206154, *4 (W.D. Mich. Jan. 21, 2011) (adopting magistrate judge's report in part and denying habeas petition); *Sardy v. Stegall*, No. 99-76005, 2001 WL 278267, *5-6 (E.D. Mich. Feb. 6, 2001) (denying habeas relief); *see also United States v. Dimora*, 843 F. Supp. 2d 799, 841-44 (N.D. Ohio 2012) (discussing the circuit split and this issue in detail in ruling on a motion in limine).

Given the foregoing case law, Petitioner cannot establish that the Michigan Court of Appeals' decision is contrary to or an unreasonable application of clearly established federal law as determined by Supreme Court precedent, or that it is based upon an unreasonable determination of the facts. The lack of Supreme Court or Sixth Circuit authority on the specific issue presented here precludes federal habeas relief under the standard of review established by the AEDPA. *See Wright v. Van Patten*, 552 U.S. 120, 126 (2008) ("Because our cases give no clear answer to the question presented, let alone one in [petitioner's] favor, it cannot be said that the state court unreasonabl[y] appli[ed] clearly established Federal law."). Additionally, the circuit court split on

the issue, particularly with the majority finding no confrontation violation under similar circumstances, indicates that the state court's decision in this case was not an unreasonable one; at most, it is one upon which "fairminded jurists" could disagree. *See generally Harrington*, 562 U.S. at 101.

To be sure, the trial court's restriction of defense counsel's cross-examination of the cooperating co-defendant kept from the jury relevant information that could have been used in assessing the cooperating witness's credibility. And, had this Court been sitting as the trial judge, it would almost certainly have permitted the broader exploration of the sentence avoided by the witness through cooperation. But, that is not the test to be applied on habeas review. In habeas corpus proceedings, the test is whether the state court's decision is contrary to or an unreasonable application of clearly established Federal law as determined by Supreme Court precedent -- a test which, as indicated, the Court finds is not met in this case.

Furthermore, with respect to the case at hand, it is important to note that the state trial court did not completely restrict defense counsel's cross-examination of the cooperating co-defendant regarding her plea bargain and favorable sentence, her motives and potential bias, and her credibility issues. Counsel was able to elicit information about the dismissed charges and the minimum sentence that the co-defendant received in exchange for her cooperation. While inquiry into the possible penalties for the dismissed charges was precluded, the co-defendant acknowledged that she would have gotten more time in prison if she had been convicted of the dismissed charges. 12/13/11 Trial Tr. , pp. 147-48. Defense counsel was also sufficiently able to challenge the co-defendant's testimony by questioning her version of events and the inconsistencies in her statements. The jury was well aware that the co-defendant had a strong incentive to testify against Petitioner at trial and

that her credibility was at issue. Lastly, the state trial court had a legitimate reason for restricting the cross-examination of the cooperating co-defendant about the penalties that she could have faced on the dismissed charges – to prevent the jury from learning about the possible penalties that Petitioner faced if convicted of the charged offenses at trial. Given such circumstances, the trial court acted within its discretion. Because the trial court's ruling, and the Michigan Court of Appeals' decision upholding that ruling, were reasonable, in view of all of the circumstances presented here, Petitioner fails to establish a constitutional violation.

Moreover, even if the trial court erred, Petitioner is not entitled to relief. For purposes of federal habeas review, a constitutional error that implicates trial procedures is considered harmless if it did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *see also Fry v. Pliler*, 551 U.S. 112, 117-18 (2007) (confirming that the *Brecht* standard applies in "virtually all" habeas cases); *Ruelas v. Wolfenbarger*, 580 F.3d 403, 411 (6th Cir. 2009) (ruling that *Brecht* is "always the test" in the Sixth Circuit). Confrontation errors, like other trial errors, are subject to harmless error analysis. *Delaware v. VanArsdall*, 475 U.S. 673, 684 (1986). Any error in limiting cross-examination of the cooperating co-defendant was harmless. The jury was well aware of the co-defendant's credibility issues, including the inconsistencies in her statements, her favorable plea deal, and her incentive to testify against Petitioner. The trial court also instructed the jury on witness credibility, 12/14/11 Trial Tr. pp. 109-10, and accomplice testimony, which included an instruction that such testimony should be viewed more cautiously than an ordinary witness. *Id.* at p. 114. Furthermore, the prosecution presented significant other evidence of Petitioner's guilt at trial, including testimony

from the victim, his treating physician, and investigating authorities. Any confrontation error did not influence the jury's verdict.

Lastly, to the extent that Petitioner asserts that the limitation on cross-examination of her co-defendant violated the Michigan Constitution, she merely alleges a violation of state law which fails to state a claim upon which habeas relief may be granted. *See, e.g., Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"). State courts are the final arbiters of state law and the federal courts will not intervene in such matters. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Sanford v. Yukins*, 288 F.3d 855, 860 (6th Cir. 2002). Habeas relief is not warranted on this claim.

### B. Jury Instruction Claim

Petitioner relatedly asserts that she is entitled to habeas relief because the trial court failed to instruct the jury about the potential sentences that the co-defendant avoided by accepting a plea deal in exchange for her testimony. The Michigan Court of Appeals denied relief on this claim finding that the trial court instructed the jury on witness credibility and accomplices and the instructions, as a whole, adequately protected Petitioner's rights. *Little*, 2013 WL 1137183 at *3.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. In order for habeas relief to be warranted on the basis of incorrect jury instructions, a petitioner must show more than that the instructions are undesirable, erroneous or universally condemned. Rather, taken as a whole, they must be so infirm that they rendered the entire trial fundamentally unfair. *Estelle*, 502 U.S. at 72; *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977). If an instruction is ambiguous and not necessarily erroneous, it violates

the Constitution only if there is a reasonable likelihood that the jury applied the instruction improperly. *Binder v. Stegall*, 198 F.3d 177, 179 (6th Cir. 1999). A jury instruction is not to be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record. *Grant v. Rivers*, 920 F. Supp. 769, 784 (E.D. Mich. 1996). The failure to give an instruction that is supported by the evidence does not automatically justify habeas relief – the failure to instruct must have rendered the trial fundamentally unfair. *Cupp v. Naughten*, 414 U.S. 141, 147 (1973); *Daniels v. Lafler*, 501 F.3d 735, 741 (6th Cir. 2007). "An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Henderson*, 431 U.S. at 155. State law instructional errors rarely form the basis for federal habeas relief. *Estelle*, 502 U.S. at 71-72.

In this case, any error by the trial court in instructing the jury on this issue did not render the trial fundamentally unfair because the instructions as a whole were sufficient to inform the jury of the elements of the crime and the proper consideration of the evidence, as well as Petitioner's defense and other matters to relevant to her interests. The trial court instructed the jury on witness credibility and accomplice testimony. Moreover, the co-defendant testified about her plea deal, including the dismissal of the more serious charges and the favorable sentence that she received in exchange for her testimony. Defense counsel also had ample opportunity to dispute the co-defendant's version of events and impeach her credibility such that the jury was well aware of her potential bias against Petitioner. No due process violation occurred.

Furthermore, to the extent that any error could be seen as a constitutional one, it was nonetheless harmless. As discussed, a constitutional error that implicates trial procedures is considered harmless on habeas review if it did not have a "substantial and injurious effect or

14

influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637; *see also Fry*, 551 U.S. at 117-18; *Ruelas*, 580 F.3d at 411. Such was the case here. The jury was well aware of the co-defendant's plea deal and her credibility issues and the prosecution presented other significant evidence of Petitioner's guilt at trial. Any error in instructing the jury did not influence the jury's verdict. Habeas relief is not warranted on this claim.

      **C.**      **Sentencing Claim**

Lastly, Petitioner asserts that she is entitled to habeas relief because the trial court erred in scoring two offense variables (OV 7 and OV 8) of the state sentencing guidelines. The Michigan Court of Appeals denied relief on this claim. The court found that the trial court properly scored OV 7 at 50 points because Petitioner used excessive brutality beyond what was even necessary to sustain her torture conviction and that the trial court properly scored OV 8 at 15 points because the sentencing offense was torture, not kidnapping, and the record supported the scoring of both variables. *Little*, 2013 WL 1137183 at *4.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. A sentence imposed within the statutory limits is generally not subject to federal habeas review. *Townsend v. Burke*, 334 U.S. 736, 741 (1948); *Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999). Claims which arise out of a trial court's sentencing decision are not cognizable upon habeas review unless the petitioner can show that the sentence exceeded the statutory limits or is wholly unauthorized by law. *Lucey v. Lavigne*, 185 F. Supp. 2d 741, 745 (E.D. Mich. 2001). Petitioner's sentences are within the statutory maximums. *See* MICH. COMP. LAWS §§ 750.85 (life imprisonment for torture), 750.349 (life imprisonment for kidnapping), 750.84 (10 years imprisonment for assault with intent to do great bodily harm less than

murder). Consequently, they are insulated from habeas review absent a federal constitutional violation.

Petitioner's claim that the trial court erred in scoring OV 7 and OV 8 of the state sentencing guidelines is not cognizable on habeas review because it is a state law claim. *See Howard v. White*, 76 F. App'x 52, 53 (6th Cir. 2003) ("A state court's alleged misinterpretation of state sentencing guidelines . . . is a matter of state concern only."); *Cheatham v. Hosey*, 12 F.3d 211, 1993 WL 478854, *2 (6th Cir. Nov. 19, 1993) (departure from state sentencing guidelines is a state law issue not cognizable on federal habeas review); *McPhail v. Renico*, 412 F. Supp. 2d 647, 656 (E.D. Mich. 2006); *Robinson v. Stegall*, 157 F. Supp. 2d 802, 823 (E.D. Mich. 2001). Any alleged error in scoring OV 7 and OV 8 and determining the sentencing guideline range does not justify federal habeas relief.

Moreover, to the extent that Petitioner contests the state court's interpretation of state law regarding OV 7 and OV 8 and the application of that law, she is not entitled to relief. It is well-settled that "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting on habeas review." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *see also Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975) (state courts are the final arbiters of state law); *Sanford v. Yukins*, 288 F.3d 855, 860 (6th Cir. 2002). State courts are the final arbiters of state law and the federal courts will not intervene in such matters. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987). Habeas relief does not lie for perceived errors of state law. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Petitioner fails to state a claim upon which relief may be granted as to this issue. Habeas relief is not warranted.

## V. Conclusion

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief on her claims and that the petition for a writ of habeas corpus must be denied.

Before Petitioner may appeal the Court's decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); FED. R. APP. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court denies relief on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the constitutional claim debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Having conducted the requisite review, the Court concludes that Petitioner fails to make a substantial showing of the denial of a constitutional right as to her claims. No certificate of appealability is warranted. Nor should Petitioner be granted leave to proceed in forma pauperis on appeal as an appeal cannot be taken in good faith. *See* FED. R. APP. P. 24(a).

Accordingly;

**IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED** and **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED** and leave to proceed in forma pauperis on appeal is **DENIED**.

s/Gerald E. Rosen  
Chief Judge, United States District Court

Dated: October 16, 2015

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on October 16, 2015, by electronic and/or ordinary mail.

        s/Julie Owens
        Case Manager, (313) 234-5135